IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | CRIMINAL ACTION NO. |
| v. | : | 1:17-CR-395-MLP-JKL |
| | : | |
| GILBERTO LOPEZ GIRALDO, | : | |
| | : | |
| Defendant. | : | |

## MR. GILBERTO LOPEZ GIRALDO'S SENTENCING MEMORANDUM AND REQUEST FOR A GUIDELINE VARIANCE

NOW COMES DEFENDANT, GILBERTO LOPEZ GIRALDO, by and through undersigned counsel and files this Sentencing Memorandum and Request for a Guideline variance and shows in support as follows:

## INTRODUCTION

On March 7, 2022 Mr. Lopez Giraldo, along with his remaining and surviving co-defendants in this case, plead guilty to Count Five of the Indictment, conspiracy to commit money laundering.   As the Court is aware as a result of extensive pre-trial litigation, the start of this case arose

1

in 2012 as a result of an ongoing investigation out of Chicago and New York into a Black Market Peso Exchange involving individuals in the United States and Colombia.  During the investigation it was revealed that there was also a separate money laundering business in Atlanta run by now deceased Juan Pablo Lozada Franco. Mr. Gilberto Lopez Giraldo was identified as working for Mr. Lozada Franco in the Atlanta area.  Despite the Government's sufficient knowledge to proceed with the criminal matter at that time, Mr. Lopez Giraldo was not arrested until March of 2019, long after his criminal activity in this case ended.

## GUIDELINE ISSUES

Mr. Lopez Giraldo filed two substantive objections to the Pre-Sentence Report.   Specifically, Mr. Lopez Giraldo objects to receiving a six level enhancement based on U.S.S.G.§ 2S1.1(b)(1)(B) for "knowing or believing that any of the laundered funds were the proceeds of, or were intended to promote an offense involving the manufacture, importation, or distribution of a controlled substance."   (PSR, Par. 87).  Mr. Lopez Giraldo also objected to receiving a four-point enhancement pursuant to

U.S.S.G. § 2S1.1(b)(2)(C) because he "was in the business of laundering funds. (PSR, par. 88).

1. **THE EVIDENCE DOES NOT SUPPORT MR. LOPEZ GIRALDO KNEW OR BELIEVED THE LAUNDERED FUNDS WERE THE PROCEEDS OF CONTROLLED SUBSTANCE ACTIVITY**

The sole evidence proffered by the Government during the pendency of this case to indicate the laundered funds were "drug proceeds" was a Coca Cola box which contained plastic wrapped cash and secondly, the "two Hispanic males that delivered it were later followed to a house in which methamphetamine was later discovered." (PSR, Par. 87). That is it. That in and of itself is insufficient to meet the Government's burden to show Mr. Lopez Giraldo knew or should have known the laundered funds were a result of drug proceeds. Mere speculation on the part of the agents or anyone else is also not sufficient to prove this enhancement. Moreover, the stereotype of Colombian drug dealers is also insufficient to support this enhancement.

In an unpublished 11th Cir. Court decision the Court upheld the enhancement for knowledge of illegal narcotics proceeds because the

defendant "was on notice early in the conspiracy that drugs were involved because a dog trained to alert to narcotics alerted to [the defendant's] car, and officers subsequently found and seized money from the car."   United States v. Melo, 259 Fed. Appx. 248, 256 (11th Cir. 2007).   Additionally, the defendant had signed a forfeiture waiver acknowledging the money was contraband.   See, Melo at 256.   Significantly the Court noted that "given the circumstantial nature of the evidence as to [Mr. Melo's] knowledge, we do not think his challenge to the evidence frivolous." Melo at 256.   Here, Mr. Lopez Giraldo was not on any notice that his money laundering proceeds were the result of drug activity.

In a First Circuit decision, the Court upheld the enhancement where there was a recording of the defendant and a co-defendant discussing hiding some "coke" money and "laundering the rest."   See, United States v. George, 761 D.3d 32, 60 (1st Cir. 2014).   Again, there is no such similar evidence here which would support any knowledge Mr. Lopez Giraldo knew he was laundering drug money.

## 2.   MR. LOPEZ GIRALDO WAS NOT IN THE BUSINESS OF LAUNDERING FUNDS

The evidence is clear Mr. Lopez Giraldo was one of many people who had a small business shop in the El Diamante Shopping Mall in Cali, Colombia.   One of the many issues raised in pre-trial litigation was the fact, due to the length of time before the Government indicted and extradited Mr. Lopez Giraldo he was unable to produce business records, receipts, rental contracts, to show that he engaged in legitimate business at the El Diamante Shopping Mall.   While Mr. Lopez Giraldo does not dispute he was also engaged in money laundering under Juan Pablo Lozada Franco, he maintains that he also engaged in legitimate business during the time period alleged in the Indictment; October 26, 2010 through approximately November 25, 2014.

Attached are Mr. Lopez Giraldo's filed tax documents showing income earned and filed in the relevant years of 2010, 2012, 2013 and 2014.  (Exhibit A).  Also attached is a copy of one of Mr. Lopez Giraldo's business licenses from the Cali commercial trade establishment.   (Exhibit B).

The application of U.S.S.G.§ 2S1.1(b)(2)(C) is determined by considering the "totality of the circumstances".   See, <u>Application Notes to §2S1.1(b)(2)(C)</u>.   The six factors listed are: whether the defendant (1) regularly engaged in laundering funds; (2) laundered funds for an extended period of time; (3) laundered funds from multiple sources; (4) generated a substantial amount of revenue in return for laundering funds; (5) had a prior conviction for a money laundering related offense; or (6) made statements during the course of an undercover government investigation that he had engaged in any of the conduct listed in factors (1) (2), (3), or (4).   <u>U.S.S.G. § 2S1.1 cmt. n. 4 (B).</u>

Factors four, five and six clearly do not apply to Mr. Lopez Giraldo. The evidence indicates that Mr. Lopez Giraldo dealt almost exclusively with the "Atlanta CS" (La Negra) at the direction of Juan Pablo Lozada Franco to coordinate money pickups.   It should be noted that La Negra only worked in the Atlanta area, not Chicago.     Based on this evidence, factor three does not apply here.

The number of transactions Mr. Lopez Giraldo was involved with was neither extensive and not over an extended period of time, although

it was over a year in duration.   While the amount of the proceeds in the entire conspiracy may have totaled $1, 496, 817.00, including Chicago and New York, the proceeds Mr. Lopez Giraldo were directly involved with was substantially smaller.   Therefore, neither factors one nor two apply either.

In sum, based on the totality of the circumstances, Mr. Lopez Giraldo should not be assessed the additional four points for "being in the business of money laundering because the facts do not sufficiently support enough of the factors.

## MITIGATION AND REQUEST FOR A VARIANCE FOR A NON GUIDELINE SENTENCE

Mr. Lopez Giraldo entered a plea agreement with the understanding the Government would be recommending recommend a 78 month sentence and he bound to request a sentence of no less than 63 months. Mr. Lopez Giraldo is aware the Court does not have to follow the parties' recommendations.  Mr. Lopez Giraldo is also aware the Court can impose any sentence, with certain restrictions, it deems fair and reasonable after

evaluating the facts and circumstances involved in the case, including Mr.
Lopez Giraldo himself.   He has been incarcerated since March 6, 2019.

## PRETRIAL ARGUMENTS OF DELAY AND PREJUDICE SUPPORT A LESS THAN GUIDELINE SENTENCE

The Court can consider as mitigation issues raised in pretrial
motions that were legally denied although factually correct.   Here, Mr.
Lopez Giraldo and the other three co-defendants raised several issues
about the extreme length of delay between the acts alleged in the
indictment, the obtaining of the indictment and the arrest and ultimate
extradition to the United States on these charges. The undeniable lengthy
delay resulted in the loss of critical documents and the ability to obtain
business records and witnesses.   While Mr. Lopez Giraldo was able to
obtain a few documents that were kept not at his place of business, such
as tax records and a license, his personal business records were long gone
as was the contact information and records for his space at El Diamante
Mall.   Although the defendants did not prevail on their legal arguments
about the detrimental significance of the delay and the Court found there
was no prejudice, the length of the delay was not in dispute.  The loss of

records and other potentially helpful business information due to the delay is a mitigating factor the Court may consider.

The length of delay in arresting Mr. Lopez Giraldo in Colombia and extraditing him to the United States after the dates of the offense is also a mitigating factor. At least five years elapsed from the last money laundering transaction and Mr. Lopez Giraldo's arrest. The raid at the El Diamante Mall was a wake up call for many, including Mr. Lopez Giraldo. Clearly Mr. Lopez Giraldo did not engage in any further criminal activity, money laundering or otherwise after that date. The fact that Mr. Lopez Giraldo stopped shows he was able to acknowledge the wrongness of his previous actions and change his life to one of a law abiding person. This Court can consider this fact in imposing an appropriate sentence.

The length of delay in extraditing Mr. Lopez Giraldo to the United States is also a mitigating factor. Mr. Lopez Giraldo was arrested on March 6, 2019 in Cali, Colombia and spent one full year in one of the nastiest jails in Colombia, La Picota, awaiting extradition to the United States to answer these charges; an extradition he did not oppose. The Magistrate Court received evidence from Mr. Lopez Giraldo's attorney,

Monica Rincon, not only about her legal attempts both in Colombia and with the U.S. Attorney's Office to get the four defendants in this case to the United States as quickly as possible, but also as to the conditions of the jail at La Picota, where they were all held.  The foul conditions included tiny cells packed with garbage and trash.  The inmates' food was rancid and their drinking water contaminated.   There was open sewage in the jail and the smell was nauseating.  Rats ran around openly.  No hygiene supplies were provided nor were medical services available.   It was one year to the day of his initial arrest that Mr. Lopez Giraldo was finally extradited to the United States despite, as Ms. Rincon testified, the parties asked to be extradited and did not request a hearing in Colombia.

The uncertainty of the actual charges against Mr. Lopez Giraldo and the length of time he awaited to not only be officially charged but to be sent to the United States was extremely stressful and is another factor this Court can consider in imposing a fair and reasonable sentence.

# FAMILY DIFFICULTIES AND HEARTBREAK DURING MR. LOPEZ GIRALDO'S LENGTHY PRETRIAL INCARCERATION

## FATHER'S DEATH FROM COVID

The most terrible tragedy to befall Mr. Lopez Giraldo and his brother, Raul, was their beloved father's death from Covid in April of 2021 at age 71. Their father, Moises Lopez Carmona, was not in immediate poor health prior to contracting Covid and was a cancer survivor and his death was a horrible event. Not only were the brothers not able to be of any physical and emotional support to their mother and their family, they were not able to see their father before he passed. Their father died knowing his two sons were in jail in the United States and not knowing when and if they would ever return home. Their mother had a nervous breakdown from grief and the stress of losing her husband and without all of her children present. Moreover, the financial support provided by the brothers while they were living in Colombia was and is, no longer there.

Mr. Lopez Giraldo's mother now suffers from severe health problems since the death of her husband. Currently, she is almost an

invalid and unable to care for herself.  Again, neither of the brothers are able to be there to help take care of her in this incredibly difficult time.

   Mr. Lopez Giraldo has always been extremely close to his parents and his family and, along with his sister and brother, have always been a tight knit family.  (Family Photos, Attached as Exhibit C).   He suffers enormously from guilt he has not been able to be with his family during these extraordinary times, all for reasons brought on by himself.   Mr. Lopez Giraldo will never forgive himself for his actions that kept him from being with his family during the pandemic.

### <u>MR. LOPEZ GIRALDO'S IMMEDIATE FAMILY HAS SUFFERED GREATLY SINCE HIS ARREST</u>

   Mr. Lopez Giraldo is married to Damaris Garcia with whom he has two children, two boys, Juan Felipe, now aged 20 and Santiago , now aged 10.   He and his family, prior to his arrest, enjoyed family life in Cali, Colombia and traveling together as a family.   (Family photos attached as Exhibit D).  Both of his sons were active in sports and his wife was a stay-at-home mother until Mr. Lopez Giraldo was arrested. After he was arrested on these charges family life changed drastically and his wife went

back to work as a nurse.   His family has missed him very much during his incarceration and especially during the pandemic.

Unfortunately, during this time period, and, exacerbated by the stresses of the pandemic, Mr. Lopez Giraldo's eldest son, formerly an excellent student and athlete, became involved in drugs in the last two years.   Fortunately, due to Mr. Lopez Giraldo's wife's quick intervention and with Mr. Lopez Giraldo's long distance encouragement, their son has undergone successful drug treatment and therapy and is becoming a productive and drug free person.   It has been difficult, however, for her to navigate this all on her own.   Mr. Lopez Giraldo suffers extreme guilt and remorse that, again, due to his own actions, he was not able to be with his wife and family during this frightening and critical time for their son. He blames himself for his family's troubles.

Additionally, Mr. Lopez Giraldo's youngest son, Santiago, was born with a cleft palate and despite numerous operations, it has not been properly corrected.  Santiago has suffered physically and psychologically from the situation.  Santiago references this health issue in his letter and the trouble he has experienced at school because of his medical condition.

Santiago was only 7 when his father was arrested and has particularly felt his father's absence.   Both Santiago and Juan Felipe need their father home as soon as possible.   Mr. Lopez Giraldo is punished for life for the trauma he has caused all of his family; trauma that has permanent consequences.

## COVID, JAIL CONDITIONS AND MR. LOPEZ GIRALDO

At the time of Mr. Lopez Giraldo's arrest the world had not heard of the Covid-19 pandemic.   When he arrived in the United States in March of 2020, the pandemic was just beginning and it was believed it would be over "by summer."  Mr. Lopez Giraldo met undersigned counsel in person once and then for the next year or so had to meet via video camera or over the phone during lock down and the numerous shut downs at the jail.  By the time Mr. Lopez Giraldo's plea was entered on March 7, 2022 he lost his father to the virus and he, himself, contracted Covid while incarcerated in the Robert A. Deyton Detention Center (RADD).   All around him pod mates and other inmates were contracting the virus and becoming deathly ill.  The evidentiary hearings in this case were continued repeatedly due to Covid concerns and there was at least one Covid scare after a hearing.

The conditions in RADD during the pandemic were and still are, frightening, with a large numbers of the residents as well as the guards, contracting the virus. The pandemic continues to affect everyone in RADD. The residents often lacked personal protective equipment, such as masks and there was a lack of personal hygiene items, such as soap. Many were housed with others experiencing symptoms with no way to practice social distancing. Even now many inmates and staff are contracting the new strains of the Covid virus.

Mr. Lopez Giraldo, has had to live under extreme duress during this time period. While it is understood that everyone has been under extreme stress for the last several years, it is even more difficult for those incarcerated. The unprecedented fear and uncertainty of this time period and the stress of being incarcerated and not able to often contact family or be with family during a pandemic cannot be underestimated. Here, not only did Mr. Lopez Giraldo contact the virus himself but he lost a family member and was unable to do anything to help. This Court can consider these conditions in imposing a fair and reasonable sentence for Mr. Lopez

Giraldo by giving a variance from the Guidelines to reflect the unusual harshness of this situation.

## MR. LOPEZ GIRALDO'S BACKGROUND AND EXTREME REMORSE MAKE IT UNLIKELY HE WILL EVER COMMIT ANY OTHER CRIME

Mr. Lopez Giraldo is 51 years old.   He is well educated and attended university.   (Certificates Attached as Exhibit E). He has no prior criminal history and his wife and family are long established and firmly rooted in their neighborhood and community.    Their sons attend school.  (See, community certificates, attached as Exhibit F).    He is a family man. (Additional family photos attached as Exhibit G).  His extreme remorse for the effects his criminal actions have had on his family is an important factor for this Court to consider.  As noted above, once the El Diamante Mall was raided, Mr. Lopez Giraldo ceased any involvement in money laundering.

Mr. Lopez Giraldo has a large and supportive community.   Prior to his extradition his neighbors, family and his priest wrote letters in support of him in the hopes he would get a bond.   (Letters attached as Exhibit H). For purposes of this sentencing his family and friends again wrote letters

in support of Mr. Lopez Giraldo.   (Letters attached as Exhibit I).   Little has changed in the support of his family since his initial arrest, other than time and the loss of his father.  His sons are older and have suffered, as has his wife.   Yet what remains clear is their love and steadfast support for their father and husband.

## A NON GUIDELINE SENTENCE FOR MR. LOPEZ GIRALDO IS FAIR, JUST,  AND MEETS THE REQUIREMENTS OF THE GOALS OF FEDERAL SENTENCING

Mr. Lopez Giraldo's Guidelines, without his objections being granted are calculated at offense level 29, Criminal History I with a custody guideline range of 87-109 months.   If his objections are granted, his custody guideline range would 30-37 months.

The Court has the discretion to fashion a sentence that considers factors other than those spelled out in the Guidelines.  The sentence must be reasonable.  The Court must weigh the factors it considers in fashioning the sentence in a reasonable way.   As the courts have repeatedly held, a sentence within the Sentencing Guidelines cannot be *presumed* to be reasonable.  <u>See</u>, <u>United States v. Nelson</u>, 129 S. Ct. 890 (2009).

## **<u>CONCLUSION</u>**

For the above and foregoing reasons, Mr. Lopez Giraldo respectfully requests this Court impose a non-Guideline Sentence.

This 6th day of July, 2022.

Respectfully submitted,

s/Sandra Michaels
SANDRA MICHAELS
*Attorney for Defendant Lopez Giraldo*
Georgia Bar No. 504014
965 Virginia Avenue NE
Atlanta, Georgia  30306
(404) 312-5781
slmichaelslaw@gmail.com

## **CERTIFICATE OF SERVICE**

Undersigned counsel has served the forgoing **Sentencing Memorandum** today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

This 6th day of July, 2022.

<div style="margin-left: 50%;">

s/Sandra Michaels

SANDRA MICHAELS
*Attorney for Defendant Lopez Giraldo*
Georgia Bar No. 504014
965 Virginia Avenue NE
Atlanta, Georgia  30306
(404) 312-5781
slmichaelslaw@gmail.com

</div>